IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 09–cv–00040–WJM–KMT

GERALD HANSEN ELLER,

      Plaintiff,

v.

EXPERIAN INFORMATION SOLUTIONS, INC., a foreign corporation, and
TRANSUNION LLC, a foreign corporation,

      Defendants.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

**Magistrate Judge Kathleen M. Tafoya**

      This matter comes before the court on cross motions for summary judgment.  On April 16, 2010, Defendant Trans Union LLC (Trans Union) filed a motion for summary judgment (Doc. No. 118 [TU's Mot.]), Defendant Experian Information Solutions, Inc. (Experian) filed a motion for summary judgment (Doc. No. 122 [Exp.'s Mot.]), and Plaintiff Gerald Eller (Plaintiff) filed a motion for summary judgment (Doc. Nos. 124 [Pl.'s Mot.] & 125 [Pl.'s Mem.]).  These motions were referred to this court on February 25, 2011.  (Doc. No. 144.)

### STATEMENT OF THE CASE

      This case stems from a long history of disputes between Plaintiff and Defendants regarding Plaintiff's consumer credit file.  The following description is taken from Plaintiff's Second Amended Complaint (Doc. No. 34 [SAC], filed 9/21/2009), Trans Union's Answer and Counterclaim to Plaintiff's Second Amended Complaint (Doc. No. 39 [TU's Answer &

Countercl.], filed 10/5/2009), Experian's Answer and Counterclaim to Plaintiff's Second Amended Complaint (Doc. No. 41 [Exp.'s Answer & Countercl.], filed 10/16/2009) and the parties' submissions with respect to this recommendation.

In 1999, Plaintiff, who also goes by the name "Jerry," filed suit against Trans Union based on errors in his credit report arising from the inclusion of information relating to a "Jerry Willard" in Plaintiff's Trans Union credit file. The parties settled in August of 2001. In 2003, Plaintiff filed suit against Trans Union and Experian, again based on the inclusion of information relating to Jerry Willard in Plaintiff's credit files. The parties settled that action in early 2006.[1]

Plaintiff filed the present action in January 2009. It also arises from alleged inaccuracies relating to Jerry Willard in Plaintiff's consumer credit files. As to Experian, Plaintiff claims that in January 2007 Citibank denied him credit based on an Experian credit report. He asserts that Experian did not accurately report items agreed to in the 2006 Settlement Agreement and that Experian reported or failed to report items consistent with the Fair Credit Reporting Act (FCRA) and the 2006 Settlement Agreement. Plaintiff also alleges that, despite his requests, Experian never provided Plaintiff with a copy of the report used by Citibank to deny credit, nor did it ever investigate the denial as it related to Plaintiff's credit report.

---

[1] Plaintiff refers to this as the March 2006 Settlement Agreement. Experian settled with Plaintiff in March of 2006. (Doc. No. 123-5 [Chang Decl.] at 12-13.) The Settlement Agreement with Trans Union was executed by Plaintiff on February 11, 2006 and by Trans Union on April 7, 2006 (Doc. No. 119, Ex. A-1 [2006 Settl. Agree. with TU] at 9-10.) For clarity, the court will refer to both settlements as simply the 2006 Settlement.

As to Trans Union, Plaintiff claims that in November 2008 he became aware that NCO Financial had reported to Trans Union a delinquent debt relating to a Direct TV account belonging to Jerry Willard.  Plaintiff alleges that the NCO Financial account appeared on Plaintiff's February 9, 2006 Trans Union credit report and was deleted as part of the 2006 settlement negotiations but reappeared on his December 2008 credit report, contrary to his 2006 Settlement Agreement with Trans Union.

Plaintiff asserts that both Defendants have taken inadequate action to correct Plaintiff's consumer reports, delete the false data or otherwise conduct an appropriate investigation, have failed to take necessary and reasonable steps to prevent further inaccuracies from entering Plaintiff's credit file, have failed to adopt and follow reasonable procedures to assure the maximum possible accuracy in Plaintiff's consumer credit and have failed to adopt and follow reasonable procedures to assure the proper investigation.

Plaintiff's Second Amended Complaint asserts claims against Experian for negligent and willful noncompliance with Sections 1681e(b) and 1681i of the FCRA, and for willful violation of the Colorado Consumer Credit Reporting Act (CCCRA), Colo. Rev. Stat. §§ 12-14.3-101 *et seq*.  He asserts the same claims against Trans Union.  Plaintiff seeks compensatory damages, punitive damages, treble damages, attorney's fees[2] and costs.

---

[2] Plaintiff was *pro se* when he initiated this action.  (*See* Doc. No. 1.)  He was represented at the time he filed both his First and Second Amended Complaints.  (*See* Doc. Nos. 23, 30, 34.) The court granted counsel's motion to withdraw on November 23, 2009 and Plaintiff has proceeded *pro se* since that time.  (*See* Doc. No. 65.)

Trans Union and Experian both counterclaim against Plaintiff asserting that Plaintiff's Section 1681i claims are frivolous and were filed in bad faith or for purposes of harassment. Both Defendants seek attorneys' fees incurred in defending against the Section 1681i claims.

## PROCEDURAL HISTORY

Plaintiff, acting *pro se*, initiated the present action on January 9, 2009.  (Doc. No. 1.)  On August 20, 2009, District Judge Marcia S. Krieger, granted in part Trans Union's motion to dismiss, finding that Plaintiff had failed to plead facts sufficient to establish any claim.  (Doc. No. 24.)  Noting the recent entry of appearance by counsel on behalf of Plaintiff, the Court allowed Plaintiff to replead his complaint.  (*Id.* at 6; *see also* Doc. No. 114 [Apr. 8, 2010 Hr'g Tr.] at 6:3-4.)

On September 9, 2009, Plaintiff filed his First Amended Complaint.  (Doc. No. 30 [FAC].)  The First Amended Complaint alleged that Plaintiff's credit was affected due to erroneous reporting by both Experian and Trans Union.  Specifically, the First Amended Complaint alleged that, on January 10, 2007, Plaintiff was denied credit by Citibank based on an Experian credit report (*id.* at ¶ 13); on October 25, 2007, Bank of America reduced Plaintiff's credit line based on information received from Experian (*id.* at ¶ 15); on November 1, 2007, Plaintiff was denied credit by Bank of America based on an Experian credit report (*id.* at ¶ 16); on May 8, 2008, Plaintiff was denied credit by Card Services based on a Trans Union credit report (*id.* at ¶ 17); on July 2, 2008, Plaintiff was denied credit by MasterCard based on an Experian credit report (*id.* at ¶ 18); on September 1, 2008, Plaintiff was denied credit by Bank of America based on an Experian credit report (*id.* at ¶ 19); on December 19, 2008, Plaintiff was

4

denied credit by Bank of America based on a Trans Union credit report (*id.* at ¶ 20); and on March 18, 2009, Plaintiff was denied credit by Farmers State Bank based on a Trans Union credit report (*id.* at ¶ 21).

The First Amended Complaint further alleged that, despite requests from Plaintiff, Experian never provided a copy of the credit report used by Citibank to deny credit in January 2007. (*Id.* at ¶ 14.) The First Amended Complaint also alleged that, in approximately November of 2008, Plaintiff became aware that NCO Financial had reported a delinquent debt relating to Capital One or Direct TV, apparently belonging to Jerry Willard, to both Trans Union and Experian. (*Id.* at ¶ 22.) Finally, the First Amended Complaint alleged that both Defendants were erroneously reporting a Federal student loan taken out by Jerry Willard as belonging to Plaintiff. (*Id.* at ¶ 23.) Plaintiff claims that he disputed the accuracy of his student loan information with both Trans Union and Experian. (*Id.*)

Days later, on September 18, 2009, Plaintiff filed an unopposed motion to amend his complaint for the second time. (Doc. No. 31.) The motion states that, after filing his First Amended Complaint, Plaintiff received substantial documentation through subpoenas and Experian's disclosures and had his deposition taken. (*Id.* at ¶ 6.) The motion further states:

> As a result of substantial new information having been set forth in this case, the Plaintiff desires to amend the Complaint to remove the Privacy Act claims against both Experian and Trans Union and to remove the breach of contract claims against both Experian and Trans Union and to remove the claims against Trans Union and Experian pursuant to 1681(b) [sic] Permissible Purpose claims and to remove any claims relating to Fair Credit Reporting Act claims based on the alleged inaccurate reporting of the Plaintiff's student loans and to remove the claim against Experian based on the NCO Financial item.

(*Id.* at ¶ 7.)  On September 21, 2009, the court granted Plaintiff's motion to amend and entered Plaintiff's Second Amended Complaint in the docket.  (Doc. No. 33.)

Plaintiff's Second Amended Complaint is the operative complaint in this action.  It again asserts that, on January 10, 2007, Plaintiff was denied credit by Citibank based on an Experian credit report and that, despite requests from Plaintiff, Experian never provided a copy of that credit report, nor did it ever conduct an investigation into the denial of credit.  (SAC at ¶¶ 12-13.)  The Second Amended Complaint also asserts that, in approximately November of 2008, Plaintiff became aware that NCO Financial had reported to Trans Union a delinquent debt relating to a Direct TV account belonging to Jerry Willard.  (*Id.* at ¶ 14.)  The Second Amended Complaint alleges that the NCO Financial account appeared on Plaintiff's February 9, 2006 Trans Union credit report and was deleted as part of the negotiations leading up to the 2006 Settlement.  (*Id.* at ¶ 15.)  The Second Amended Complaint further alleges that the NCO Financial account reappeared on Plaintiff's December 2008 credit report, contrary to the 2006 Settlement Agreement with Trans Union.  (*Id.*)

On October 16, 2009, Experian filed a motion to dismiss Plaintiff's Second Amended Complaint for failure to state a claim.  (Doc. No. 42.)  On December 8, 2009, Plaintiff filed another motion to amend his complaint, seeking to reassert "claims relating to Fair Credit Reporting Act claims based on the alleged inaccurate reporting of the Plaintiff's student loans." (Doc. No. 70.)  This court recommended denial of the motion to amend.  (Doc. No. 92.)

On April 8, 2010, Judge Krieger held a Pretrial Conference at which she adopted the court's recommendation and denied Plaintiff's motion to amend and ruled on Experian's pending

motion to dismiss. (*See* Apr. 8, 2010 Hr'g Tr.) Judge Krieger denied the motion to dismiss with

regard to Plaintiff's claim that Experian failed to take reasonable measures to ensure maximum

accuracy in Plaintiff's credit file as required by Section 1681e(b). (*Id.* at 14:1-16:2.) Based on

Plaintiff's representations that Experian failed to provide him with a copy of his credit report, the

Court found that Plaintiff's failure to specify ways in which the credit report was inaccurate was

understandable. (*Id.* at 11:18-22.) Judge Krieger granted the motion with regard to Plaintiff's

claim that Experian failed to conduct an investigation pursuant to Section 1681i. (*Id.* at 13:22-

25.) The Court also considered Plaintiff's failure to dispute the information in his credit file

understandable given that Plaintiff had not received a copy of his credit report that would allow

him to identify inaccurate information, but determined that the appropriate remedy was dismissal

without prejudice so that Plaintiff might bring a new action, if, after obtaining a copy of his

credit report and notifying Experian of the disputed material, Experian then failed to properly

investigate the dispute. (*Id.* at 13:8-21.) Finally, based on Plaintiff's allegations that Experian

failed to comply with Plaintiff's requests for a copy of his credit report, the Court construed a

claim for a violation of Section 1681g of the FCRA. (*Id.* at 12:6-17.)

        The parties filed their cross motions for summary judgment on April 16, 2010. (Doc.

Nos. 118, 122, 124.) Plaintiff responded to Trans Union's Motion on May 12, 2010 (Doc. No.

133) and Trans Union replied on May 26, 2010 (Doc. No. 135). With leave of court, Plaintiff

responded to Experian's Motion on May 5, 2011. (Doc. No. 154.) Trans Union responded to

Plaintiff's Motion on May 7, 2010 (Doc. No. 129) and Experian joined in Trans Union's

response (Doc. No. 131).  Plaintiff filed a reply on May 26, 2010.  (Doc. No. 135.)  The motions are ripe for review and recommendation.

## LEGAL STANDARD

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgments as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of showing an absence of evidence to support the nonmoving party's case.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter."  *Concrete Works, Inc. v. City & County of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994) (citing *Celotex*, 477 U.S. at 325).  The nonmoving party may not rest solely on the allegations in the pleadings, but must instead designate "specific facts showing that there is a genuine issue for trial."  *Celotex*, 477 U.S. at 324; *see also* Fed. R. Civ. P. 56(c).  A disputed fact is "material" if "under the substantive law it is essential to the proper disposition of the claim."  *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir.1998) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  A dispute is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party.  *Thomas v. Metropolitan Life Ins. Co.*, 631 F.3d 1153, 1160 (10th Cir. 2011) (citing *Anderson*, 477 U.S. at 248).

When ruling on a motion for summary judgment, a court may consider only admissible evidence.  *See Johnson v. Weld County, Colo.*, 594 F.3d 1202, 1209-10 (10th Cir. 2010).  The factual record and reasonable inferences therefrom are viewed in the light most favorable to the

party opposing summary judgment. *Concrete Works*, 36 F.3d at 1517. Moreover, because

Plaintiff is proceeding *pro se*, the court, "review[s] his pleadings and other papers liberally and

hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United*

*States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted); *see also Haines v. Kerner*, 404

U.S. 519, 520-21 (1972) (holding allegations of a *pro se* complaint "to less stringent standards

than formal pleadings drafted by lawyers"). At the summary judgment stage of litigation, a

plaintiff's version of the facts must find support in the record. *Thomson v. Salt Lake Cnty*, 584

F.3d 1304, 1312 (10th Cir. 2009). "When opposing parties tell two different stories, one of

which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court

should not adopt that version of the facts for purposes of ruling on a motion for summary

judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007); *Thomson*, 584 F.3d at 1312.

### TRANS UNION'S MOTION FOR SUMMARY JUDGMENT

Based on the Second Amended Complaint, Plaintiff asserts claims against Trans Union

for negligent and willful violation of the FCRA, Sections 1681e(b) and 1681i, and for willful

violation of the CCCRA. (SAC at ¶¶ 29-37.) Trans Union argues that Plaintiff's FCRA claims

fail as a matter of law because Plaintiff cannot carry his burden on summary judgment with

regard to those claims and that, because the FCRA analysis applies to Plaintiff's CCCRA claim,

it also fails as a matter of law.

Plaintiff responds to Trans Union's Motion by incorporating by reference his own

Motion for Summary Judgment. (*See* Doc. No. 133 at 1.) Plaintiff has provided hundreds of

pages of documents in support of his Motion for Summary Judgment. (*See* Doc. No. 125 Exs. 1-

38.)  Trans Union objects to almost all of them as unauthenticated, irrelevant and hearsay and therefore improper summary judgment evidence.[3]  (*See* Doc. No. 129.)  The court's recommendation is based on Trans Union's own exhibits and the complete absence of evidence—admissible or not—from Plaintiff on certain elements of Plaintiff's claims.  The court has reviewed Plaintiff's documents, many of which replicate authenticated documents provided by the Defendants or are irrelevant to any material fact, and determined that a consideration of the documents Plaintiff provides would not alter the court's recommendation.

A.      *Section 1681e(b) claim*

Section 1681e(b) of the FCRA provides that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."  15 U.S.C. § 1681e(b).  To prevail on a claim for negligent noncompliance with Section 1681e(b), a plaintiff must establish 1) the existence of an inaccurate credit report; 2) that the consumer reporting agency failed to follow reasonable procedures to assure the maximum accuracy of its reports; 3) that the plaintiff suffered an injury; and 4) that the consumer reporting agency's failure caused

---

[3] Trans Union also objects to Plaintiff's Response and seeks to strike it arguing that the Response was untimely and fails to comply with the Court's Civil Practice Standards.  (Doc. No. 135)  When the motions for summary judgment were filed, Judge Krieger was the presiding District Judge and her Practice Standards for Civil Actions applied.  The case has since been reassigned to Judge William J. Martínez who has different practice standards.  Plaintiff's response, which was due May 10, 2010, was filed on May 12, 2010.  Given that the court's recommendation is based on Trans Union's own exhibits and the court's determination that a consideration of Plaintiff's documents would not alter the court's recommendation, the court declines to address these procedural issues.

the plaintiff's injury.  *See Cassara v. DAC Servs., Inc.*, 276 F.3d 1210, 1217 (10th Cir. 2002).

Trans Union does not argue that there was not an inaccurate credit report.  Trans Union argues

that Plaintiff cannot show a genuine dispute of material fact on elements (2), (3) or (4).

### 1.  *Element 2: Failure to Follow Reasonable Procedures*

"Reasonable procedures are those that a reasonably prudent person would undertake in

the circumstances."  *Cortez v. Trans Union, LLC*, 617 F.3d 688, 709 (3d Cir. 2010); *see also*

*Wilson v. CARCO Group, Inc.*, 518 F.3d 40, 41-42 (D.C. Cir. 2008); *Cousin v. Trans Union*

*Corp.*, 246 F.3d 359, 368 (5th Cir. 2001).  A determination of the reasonableness of a credit

reporting agency's procedures "involves weighing the potential harm from inaccuracy against

the burden of safeguarding against such inaccuracy."  *Cortez*, 617 F.3d at 709 (citation and

quotation omitted).  "The reasonableness of a credit reporting agency's procedures is 'normally a

question for trial unless the reasonableness or unreasonableness of the procedures is beyond

question.'"  *Id.* (quoting *Sarver v. Experian Info. Solutions*, 390 F.3d 969, 971 (7th Cir. 2004)).

Trans Union argues that there is no evidence to support Plaintiff's claim that Trans Union

failed to follow reasonable procedures.  (TU's Mot. at 8.)  Different courts have taken different

approaches to determine whether a Plaintiff has provided sufficient evidence to reach the jury

under Section 1681e(b).  These include: 1) requiring that a plaintiff produce some evidence

beyond a mere inaccuracy in a report in order to demonstrate a failure to follow reasonable

procedures; 2) allowing a jury to infer the failure to follow reasonable procedures from the mere

fact of an inaccuracy; or 3) upon demonstration of an inaccuracy, shifting the burden to the

defendant to provide evidence that reasonable procedures were followed.  *See Philbin v. Trans*

*Union Corp.*, 101 F.3d 957, 965 (3d Cir. 1996) (citing cases), abrogated on other grounds by

*Cortez*, 617 F.3d 688.  The Tenth Circuit has not considered these approaches or adopted one in

particular.  However, in a case involving the reasonableness of procedures under FCRA, the

court noted the general summary judgment principle that the "nonmovant must establish at least

an inference of the presence of each element essential to the claim." *Cassara*, 276 F.3d at 1212.

The appearance of the NCO Financial account in Plainitff's Trans Union credit file is the

basis for all of Plaintiff's claims against Trans Union.  (*See* SAC at ¶¶ 14-15; Doc. No. 119, Ex. I

[Pl.'s Suppl. Resp. to TU's Interrogs.] at 9-10.)[4]  Plaintiff asserts that it appeared in his February

9, 2006 Trans Union credit report, was deleted as part of the 2006 settlement negotiations, and

reappeared in his December 2008 Trans Union credit report.  (SAC at ¶ 15.)  It appears that

Plaintiff infers from this progression of events that Trans Union must not have followed

reasonable procedures.

Trans Union first argues, and the court agrees, that Plaintiff misstates the facts.  The

NCO Financial account did not appear on Plaintiff's February 9, 2006 Trans Union credit report.

(*See* Doc. No. 119, Ex. A-4 [Feb. 9, 2006 TU Cr. Rep.].)  The only adverse account appearing on

that report is a Plaza Associates account.  (*Id.* at 43.)  According to the declaration of Lynn

Romanowski, the NCO Financial account did not appear in Plaintiff's credit file until March 13,

2008.  (Doc. No. 119, Ex. B [Romanowski Decl.] at ¶ 12.)  Other credit reports confirm this.

Prior to March 13, 2008, the NCO Financial account did not appear in Plaintiff's Trans Union

---

[4] Due to inconsistent numbering of the exhibits, the court uses the page numbers created
by CM/ECF upon filing.

credit reports for March 3, 2006 (Doc. No.119, Ex. A-5 [Mar. 3, 2006 TU Cr. Rep.]) or March 5, 2008 (Doc. No. 119, Ex. A-3).  It appears for the first time in Plaintiff's March 25, 2008 report. (Doc. No. 119, Ex A-6 [Mar. 25, 2008 TU Cr. Rep.] at 20.)  The only adverse item removed from the February 9, 2006 Trans Union credit report that the court can discern is the listing of "Jerry Willard" as an alias for Plaintiff.  (*Compare* Feb. 9, 2006 TU Cr. Rep. at 43 *with* Mar. 3, 2006 TU Cr. Rep. at 5.)  Although Plaintiff's Second Amended Complaint erroneously states that the NCO Financial account first appeared on his February 9, 2006 credit report, its appearance in March of 2008 still suggests that Trans Union may have failed to follow reasonable procedures.

Trans Union does not dispute that Plaintiff previously sued Trans Union for errors in his credit report arising form the merger of information relating to Jerry Willard into Plaintiff's credit file or that that action settled in 2001.  (*Compare* SAC at ¶ 8 *with* TU's Answer & Countercl. at ¶ 8.)  Documents submitted by Trans Union demonstrate that, in February 2006, Jerry Willard was listed as an alias on Plaintiff's Trans Union credit report.  (Feb. 9, 2006 TU Cr. Rep. at 43).  Jerry Willard no longer appeared as an alias on the March 3, 2006 credit report that was part of the parties' 2006 Settlement Agreement.  (2006 Settl. Agree. with TU at 11.)  The NCO Financial account, which Plaintiff alleges belongs to Jerry Willard, appeared on Plaintiff's credit report in March 2008.  (Mar. 25, 2008 TU Cr. Rep. at 20.)  On April 22, 2009, Trans Union received instructions from NCO Financial to remove the NCO Financial account from Plaintiff's credit file.  (Romanowski Decl. at ¶ 13.)

While Plaintiff has not specified how Trans Union failed to follow reasonable procedures, he need not point to specific deficiencies in Trans Union's procedures.  *See Stewart v. Credit Bureau, Inc.*, 734 F.2d 47, 51-52 (D.C. Cir. 1984) (holding that a plaintiff need not introduce direct evidence of unreasonableness of procedures); *Morris v. Credit Bureau of Cincinnati, Inc.*, 563 F. Supp. 962, 968 (D.C. Ohio 1983) (finding existence of two similar files sufficient indicum of unreasonable procedures to satisfy plaintiff's burden where plaintiff disputed certain information and the agency corrected the information in one but not both files) (cited with approval in *Stewart*).  The court finds that the continued appearance of information regarding Jerry Willard on Plaintiff's credit report, despite a long history between the parties on this issue supports the inference that Trans Union has failed to follow reasonable procedures to insure the maximum possible accuracy of the information in Plaintiff's consumer file.

Trans Union also argues that it has provided affirmative evidence of its reasonable procedures.  Trans Union provided a declaration by Lynn Romanowski, a Senior Project Analyst for Trans Union.  (Romanowski Decl. at ¶ 2.)  She explains that Trans Union uses a computer system called CRONUS to process and store information regarding consumers.  (*Id.* at ¶¶ 4-5.)  According to Ms. Romanowski, this system is one of the most accurate in the industry for processing and storing credit and public records data.  (*Id.* at ¶ 5.) Trans Union only accepts information from qualified creditors or public vendors under contracts that require them to provide accurate data.  (*Id.* at ¶ 7.)  All data is reviewed for format errors, anomolies and content.  (*Id.*)  Records are immediately updated when new information is received from creditors or public records vendors.  (*Id.* at ¶ 8.)

14

Ms. Romanowski states that, in Trans Union's experience, NCO Financial is a reputable and experienced data furnisher and has provided accurate and reliable information regarding its accounts.  (*Id.* at ¶ 11.)  NCO Financial first reported the offending account on March 13, 2008.  (*Id.* at ¶ 12.)  Ms. Romanowski indicates that the identifying information matched Plaintiff's social security number, address and first name.  (*Id.*)  With that matched information, Trans Union does not require an exact match on last names because many consumers, male and female change their names; also mismatched names can be due to both intentional and accidental misspellings of a name.  (*Id.*)

Trans Union also points to the 2006 Settlement Agreement.  Trans Union argues that it "provided Plaintiff with a special procedure to help further assure the maximum possible accuracy of his Trans Union credit file."  (TU's Mot. at ¶ 18.)  The agreement gave Plaintiff "a direct line of communication to its legal department and specifically, to attorneys Daniel Halvorsen and Patricia Norris . . . , so that any alleged errors in [Plaintiff's] credit file could be handled expeditiously."  (Doc. No. 119, Ex. A [Reger Decl.] at ¶ 4; 2006 Settl. Agree. with TU at ¶ 7.)  Plaintiff agreed that if he discovered any errors in his Trans Union credit file, he would notify Trans Union of the error or a possible FCRA violation within thirty days.  (2006 Settl. Agree. with TU at ¶ 7.)  Moreover, Trans Union argues, Plaintiff testified that this was a reasonable procedure.  (TU's Mot. at ¶ 18 (citing Doc. No. 119, Ex. D [Pl.'s Dec. 3, 2009 Dep.] at 391:1-392:12).)

Plaintiff has not disputed Ms. Romanowski's description of Trans Union's procedures.  However, the court notes that these appear to be standard procedures that Trans Union follows

for all consumers' information.  Plaintiff's case is not that of a standard consumer.  He has been litigating the issue of misinformation pertaining to Jerry Willard appearing on his Trans Union credit report since before 2001.  Trans Union has provided no evidence regarding its reasonable procedures to address a persistent problem of mistaken identity.  The apparent persistence of the problem itself suggests that Trans Union has failed to follow reasonable procedures.

Trans Union's resort to the terms of the Settlement Agreement is similarly unavailing. Section 1681e(b) imposes an obligation on credit reporting agencies to follow reasonable procedures in the preparation of a consumer report.  *See* 15 U.S.C. § 1681e(b) ("Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates.")  Plaintiff's agreement to notify Trans Union of any errors within thirty days of discovering the error *after* receiving a credit report does not relieve Trans Union of the obligation to follow reasonable procedures *in preparing* that report.  Moreover, Trans Union can not contract out of its statutory obligations by entering into settlement agreements with consumers.  This would undermine the purpose of the FCRA.  *See Matthiesen v. Banc One Mortg. Corp.*, 173 F.3d 1242, 1245 (10th Cir. 1999) ("The purpose of FCRA is to ensure accuracy and fairness in credit reporting and to require that such reporting is confidential, accurate, relevant, and proper.")  Finally, testimony by Plaintiff suggesting that a settlement agreement procedure is reasonable, does not mean Trans Union's procedures are reasonable as a matter of law.  The evidence before the court supports an inference that Trans Union failed to follow reasonable procedures.  Thus, the court will proceed to consider elements three and four.

**2.      Elements Three and Four: Injury to Plaintiff Caused by Trans Union's Failure to Adopt Reasonable Procedures**

The FCRA provides for any actual damages sustained by the consumer as a result of a credit reporting agency's negligent noncompliance with its requirements.  *See* 15 U.S.C. § 1681o.  Plaintiff seeks "reasonable damages" including "compensatory damages associated with the costs of being denied credit, the costs and [sic] repairing his credit history, out-of-pocket expenses, pain and suffering, embarrassment, inconvenience, lost economic opportunity, loss of incidental time, frustration, emotional distress, mental anguish, fear of personal safety and security, and jeopardizing future employment prospects and career . . . ."  (SAC at 8.)

In this litigation, Plaintiff initially declined to quantify his actual damages stating that the court or the jury would make that determination.  (*See* Pl.'s Dec. 3, 2009 Dep. at 265:12-267:20; Doc. No. 119, Ex. J at 4).  However, in accordance with this court's February 8, 2010 order on Trans Union's motion to compel (Doc. No. 89), Plaintiff eventually specified damages.  In his supplemental interrogatory responses, Plaintiff includes the following sources of damages: 1) $1320 in medical expenses to Dr. Everett; 2) $13,500 in attorney's fees to Patrick McClain; 3) $15,000 in paid attorney's fees and costs to Steve Nolan in addition to a contingency fee; 4) $25,000-$50,000 in denied lines of credit; 5) $16,340 in reduction of credit; 6) "$1,100 in paper, printing, ink, fax, internet, rental and storage costs and expenses to Eller Realty company;" 7) "$4,000 in paper, postage, transportation, printing, ink, telephone, internet, rental and storage costs, expenses and fee's [sic] personally incurred by Plaintiff;" 8) $435 court and legal costs to initiate this suit; and 9) $10,000 plus legal fees, costs and expenses to Attorney Robert Sola for

representing him in the 2006 settlement negotiations.  (Pl.'s Suppl. Resp. to TU's Interrogs. at 6.)

### 1.     Dr. Everett Medical Expenses

Trans Union contends that Plaintiff cannot recover medical expenses paid to Dr. Everett because all the psychiatry visits to Dr. Everett predate Plaintiff's discovery of the NCO Financial account on his credit file.  (TU's Mot. at 25.)  Plaintiff last saw Dr. Everett on November 12, 2007.  (Doc. No. 119, Ex. O at 3.)  Plaintiff does not dispute this.  As already discussed, the record demonstrates that the NCO Financial account did not appear on Plaintiff's file until March 13, 2008 and Plaintiff did not become aware of it until December 2008.  (Pl.'s Dec. 3, 2009 Dep. at 335:20-337:5.)  As such, Plaintiff has not demonstrated that Trans Union's alleged failure to comply with the FCRA caused him to incur these medical expenses.

### 2.     Patrick McClain Attorney's Fees

Patrick McClain represented Plaintiff in his attempt to change his military record.  (Pl.'s Dec. 3, 2009 Dep. at 357:22-358:4, 360:15-22.)  Trans Union argues that legal fees paid to Mr. McClain are not related to this litigation and are not recoverable.  (TU's Mot. at 25.)  Again, Plaintiff's claim fails for lack of causation.  According to Plaintiff, his alleged problems with his military record began when he reenlisted in the army following the September 11th attacks and was denied employment as an Army Air Traffic Controller after the government inquired into his consumer credit in December 2001.  (Pl.'s Mem. at 3.)  Plaintiff claims that he was told in December 2003 that he had a "flag" in his background because his credit report was inaccurate and untruthful.  (Pl.'s Dec. 3, 2009 Dep. at 363:22-364:11.)  Moreover, Plaintiff acknowledged

18

that Mr. McClain did not mention the credit issues in the appeal to change Plaintiff's military

record because he thought the issues had been resolved.  (*See id.* at 357-360.)  There is no

indication of any relationship between the NCO Financial account, which appeared in Plaintiff's

file in March 2008, and any of the alleged issues with Plaintiff's military record which date back

to 2001.  Again, Plaintiff has not demonstrated that Trans Union caused him to incur these

attorney's fees.

### 3.      Steven Nolan Attorney's Fees

Plaintiff seeks to recover attorney's fees and a contingency fee paid to Steve Nolan.

According to Plaintiff, on October 31, 2007, Mr. Nolan notified NCO Financial that it was

erroneously attempting to collect a debt belonging to Jerry Willard from Plaintiff.  (Pl.'s Mem. at

6.)  Plaintiff testified at his deposition that Mr. Nolan also represented Plaintiff in unrelated

litigation regarding real estate.  (Pl.'s Dec. 3, 2009 Dep. at 327:11-18.)  Trans Union argues that

Plaintiff has not provided any of Mr. Nolan's bills and it is unclear whether Plaintiff seeks to

recover attorney's fees for that prior litigation.  (TU's Mot. at 25-26.)  Again, the NCO Financial

account did not appear in Plaintiff's Trans Union file until March 2008, and Plaintiff has not

provided any evidence of attorney's fees incurred as a result of the appearance of the NCO

Financial account in his file.  Moreover, prelitigation expenses to retain a lawyer are not

compensable where the lawyer was not employed to remedy any violation of the law.  *Casella v.*

*Equifax Credit Info. Servs.*, 56 F.3d 469, 474 (2d Cir. 1995).  Mr. Nolan's alleged services in

writing a letter to NCO Financial were not employed to remedy any violation of the law by Trans

Union.  Plaintiff has not demonstrated an injury compensable under the FCRA or causation as it relates to fees paid to Mr. Nolan.

       4.       Denied lines of credit

Plaintiff estimates lost credit in the amount of $25,000 to $50,000.  (Pl.'s Suppl. Resp. to TU's Interrogs. at 6.)  At his deposition, Trans Union questioned him regarding three credit denials, which Plaintiff had produced in discovery and attributed to Trans Union.  (*See* Doc. No. 119, Ex. C [Pl.'s Sep. 10, 2009 Dep.] at 242:6-19.)  These include a) a May 8, 2008 Barclays Bank denial; b) a December 19, 2008 Bank of America credit denial; and c) a March 18, 2009 Farmers State Bank loan denial.

       a.       Barclays Bank Denial

On May 8, 2008, Barclays Bank of Delaware allegedly denied Plaintiff's application for a US Airways Dividend Miles Credit Card based on information supplied by Trans Union.  (Doc. No. 119, Ex. K at 4.)  The Director of Credit Acquisition Risk Policy for Barclays testified at his deposition that Plaintiff had $8327 in outstanding collections on his credit file at the time he applied and his applications would have been automatically denied even if the NCO Financial account for $184 had not been on his credit file.  (Doc. No. 119, Ex. F at 16-17.)  Plaintiff has not disputed this evidence.  Because the NCO Financial account is the sole basis for Plaintiff's claims against Trans Union, Plaintiff has not demonstrated that the denial of credit was the result of Trans Union's failure to comply with the FCRA.

b.      Farmer's State Bank Denial

Plaintiff applied for a loan from Farmer's State Bank to consolidate his credit card debt.

(Pl.'s Dec. 3, 2009 Dep. at 315-318.)  His application was allegedly denied on March 18, 2009.

(Doc. No. 119, Ex. K at 3.)  The loan officer at Farmer's who decided whether to accept or deny

Plaintiff's loan application testified at his deposition that Plaintiff's application would have been

denied regardless of whether the NCO Financial account appeared in his credit file, due to other

derogatory accounts in his file.  (*Id.* at 15-17.)  Plaintiff has not disputed this evidence.  Again,

because the NCO Financial account is the sole basis for Plaintiff's claims against Trans Union,

Plaintiff has not demonstrated causation.

c.      Bank of America Denial

On December 19, 2008, Bank of America denied Plaintiff's request for an NFL Platinum

Plus Mastercard based on information from Trans Union.  (Pl.'s Dec. 3, 2009 Dep. at 10-12;

Doc. No. 119, Ex. K at 7.)  In support of its motion, Trans Union submitted a Declaration by the

records custodian of Bank of America.  It states:

> 3.      I have reviewed the January 26, 2010 Records Subpoena served on Bank
> of America N.A. (USA)/FIA Card Services.  After Reviewing the Records
> subpoena, Bank of America N.A. (USA)/FIA Card Services is unable to locate
> any records regarding or relating to Gerald Hansen Eller regarding the 12/15/2008
> inquiry referenced in the January 26, 2010 Records Subpoena.

(Doc. 119, Ex. H at 2.)  Trans Union has provided no explanation regarding the significance of

the December 15, 2008 date.  Given the discrepancy in dates, the court cannot be sure that Bank

of America lacks documents relating to the December 19, 2008 denial.  Moreover, a lack of

documents at Bank of America does not establish that Bank of America did not deny credit to

21

Plaintiff or that Bank of America's denial was not due to the NCO Financial account in Plaintiff's Trans Union credit file.  The court finds that the Declaration does not indicate an absence of evidence regarding causation that would shift the burden to Plaintiff.

Trans Union also argues that Plaintiff was denied other credit by Bank of America based on information provided by Experian and Experian never reported the NCO Financial account. (TU's Mot. at 23.)  Based on this, Trans Union suggests that Plaintiff would have been denied by Bank of America for the NFL Platinum Plus Mastercard regardless of whether the NCO Financial account appeared on his Trans Union credit file.  (*Id.*)  The court is not persuaded by this argument.  Bank of America's denial of credit based on information from Experian, has no bearing on whether Bank of America's denial of credit based on information from Trans Union might have been due to the NCO Financial account on Plaintiff's Trans Union file.  Because Trans Union has not shown an absence of evidence of causation to shift the burden to Plaintiff, summary judgment is not appropriate as to Plaintiff's claim for damages based on the Bank of America credit denial.

### 5.     Reductions in credit

Plaintiff estimates a reduction in credit of $16,340.  (Pl.'s Suppl. Resp. to TU's Interrogs. at 6.)  He cites two bates-labeled documents.  (*Id.* (citing "Eller Supp. 0073-0076").)  Trans Union attached these documents to its motion.  (*See* Doc. No. 119, Ex. K at 11-14.)  Both indicate credit reductions based on information provided by Experian.  Plaintiff provides no further evidence of reduction in credit attributable to information from Trans Union. Accordingly, Plaintiff has failed to show that Trans Union caused these damages.

6.      Other Costs and Expenses

Plaintiff also seeks to recover a variety of "out-of-pocket "expenses.  (*See* Pl.'s Suppl. Resp. to TU's Interrogs. at 6.)  They appear to be related to his efforts disputing his credit reports and the filing of this lawsuit.  These include "paper, printing, ink, fax, internet, rental and storage costs and expenses to Eller Realty Company," "paper, postage, transportation, printing, ink, telephone, internet, rental and storage costs, expenses and fee's [sic] personally incurred by Plaintiff," and "court and legal costs, fees, charges to initiate this suit."  (*Id.*)  Trans Union argues that Plaintiff cannot recover these expenses as a matter of law.  (TU's Mot. at 26.)

A party's "expenses incurred merely to notify [a credit reporting agency] of inaccurate credit information cannot be compensable as 'actual damages' for a violation of the FCRA." *Casella*, 56 F.3d at 474; *see also Campbell v. Experian Info. Solutions, Inc.*, No. 08-4217-CV-C-NKL, 2009 WL 3834125, at *7 (W.D. Mo. Nov. 13, 2009) (granting summary judgment where Plaintiff did not explain how plaintiff's miscellaneous out-of-pocket expenses were incurred for anything other than what plaintiff was required by law to do); *Reed v. Experian Info. Solutions, Inc.*, 321 F. Supp. 2d 1109, 1115 (D. Minn. 2004) (explaining that letters notifying credit reporting agencies and furnishers of information of dispute are not expenses incurred in enforcing statute).  Plaintiff has not explained what these expenses were for or how they were incurred for anything other than what Plaintiff was required by law to do. Accordingly, Plaintiff has not demonstrated an injury compensable under the FCRA or that Trans Union caused that injury.

7.    Robert Sola Attorney's Fees

Plaintiff seeks reimbursement for the "$10,000 plus legal fees, costs and expenses he paid to Attorney Robert Sola for representing him in the bogus Settlement Agreement of March 2006 . . . ." (Pl.'s Suppl. Resp. to TU's Interrogs. at 6.)  Trans Union argues that Plaintiff cannot recover such attorney's fees because they have nothing to do with this litigation.  (TU's Mot. at 27.)  The court agrees.  The NCO Financial account did not appear in Plaintiff's Trans Union consumer file until March 2008, long after Mr. Sola's purported representation in connection with the 2006 settlement.  Plaintiff has provided no evidence that the attorney's fees incurred to Sola resulted from the appearance of the NCO Financial account on his Trans Union credit report, thus he has failed to establish causation.

8.    Mental and Emotional Damages

Plaintiff also seeks to recover for emotional distress, mental anguish, embarrassment, frustration, fear of personal safety and security, and damage to his reputation and character. (SAC at 8; Pl.'s Suppl. Resp. to TU's Interrogs. at 6.)  A plaintiff may recover for humiliation, embarrassment and mental distress, even in the absence of economic loss.  *Cortez*, 617 F.3d at 719; *see also Casella*, 56 F.3d at 474 (citing cases).

Trans Union argues that Plaintiff cannot show any mental anguish caused by the reporting of the NCO Financial account.[5]  Trans Union recounts Plaintiff's deposition testimony

_____

[5] Trans Union suggests that the burden "is on Plaintiff to show that his damages were caused by Trans Union's alleged violations of the FCRA."  (TU's Mot. at 28.)  Ultimately the burden is on Plaintiff to prove that Trans Union caused his damages.  However, at the summary judgment stage, Trans Union must first point to an absence of evidence of causation, before the

and claims that Plaintiff's mental anguish, if any, resulted from events that occurred before the

NCO Financial account reported on Plaintiff's Trans Union credit file.  (TU's Mot. at ¶ 42.)

Trans Union also argues that Plaintiff's testimony demonstrates that Plaintiff's mental anguish

and pain relate to events that are unrelated to Trans Union, such as his experience in the military,

his loss of security clearance, the military's refusal to correct his record, Regis University's

treatment of him, and his troubles with Experian.  (*Id.* at ¶¶ 43, 44.)

Plaintiff's deposition testimony confirms Trans Union's arguments in part, but also

constitutes evidence upon which a jury could determine that Trans Union caused his mental and

emotional injuries.  When asked about his emotional distress and mental anguish at his

deposition, Plaintiff testified that it began "way before" the 2006 Settlement.  (Pl.'s Dec. 3, 2009

Dep. at 338:9-14.)  He also testified that he is upset with the military for denying his application

to correct his military records and that this has caused him mental anguish.  (*Id.* at 357:9-13.)  He

admitted that his attorney did not mention Trans Union in the application to correct his military

records because the case had settled and Plaintiff believed the matter was resolved.  (*See id.* at

357-360.)

He further testified that he is upset over losing his security clearance through the military

and this caused him mental anguish.  (*Id.* at 359:21-360:1.)  However, Plaintiff insisted that the

problems with his military record and security clearance are attributable to Trans Union.  He

explained:

_____

burden shifts to Plaintiff.  *Concrete Works*, 36 F.3d at 1518.

> The reason why my chain of command wrongfully got involved in my clearance was because they heard through rumors, through hearsay, that my credit report was confused and inaccurate and untruthful.  They improperly revoked my clearance, violated numerous Army regulations and Uniform Code of Military Justice and violated my contract with the federal government by saying that I had a flag by lying under oath that I had a flag, which I did not have, which I can prove through my enclosures.  And that's why my clearance was revoked and that's why I was demoted and that's why I was accused of threatening to kill someone and that's why I was locked up in the mental institution for 24 hours and that's why my clearance was revoked because of hearsay and rumors about my credit report.

(*Id.* at 362:16-363:6.)  Plaintiff then stated that his Colonel told him on December 17, 2003 that he had a flag in his background.  (*Id.* at 363:22-364:5.)

Plaintiff also testified that during his time in the army, from 2002 until his discharge in late 2004, he felt he was "continually subjected to discrimination, mockery, and name-calling by other soldiers and persons in [his] chain of command in the military" and that his experiences in the military between July 2002 and September 2004 caused him intense emotional distress and still cause him emotional distress today.  (*Id.* at 385:6-12.)

When asked what emotional distress Plaintiff has experienced since the 2006 settlements that is not related to all of these issues Plaintiff stated:

> Well, I signed a settlement agreement and believed that I was never going to have untruthful and inaccurate information ever reported against me or on me or about me ever again.  And then I applied for a credit card in . . . I believe it was 2007, 2008, 2007, and I was denied a credit card.  And ever since then I can't sleep, I can't relax, I can't stop being paranoid and defensive and angry, that my credit report and my life is never going to be resolved or finalized.  So, if that's the emotional distress you're referring to.
> And then finding out that, after signing that settlement agreement, two years later, a year later, Trans Union continued to put NCO Financial credit–derogatory information on my credit report after I settled with them two

26

> times, after I lost my clearance, after I got locked up in a mental institutional and I
> waived all of those damages and all of those rights.
>
> My heart pounds intensely, my brain races, and I can't think and relax and
> enjoy any part of my life.  I can't enjoy personal relationships.  I can't enjoy a
> relationship with my mother or my father, before he passed away.  I can't have a
> girlfriend.  I can't find a girlfriend.  I don't enjoy doing things with my friends.  I
> have difficulties with co-workers and people that I experience, and it's all because
> of Trans Union and Experian continually denying my rights to due process and
> my pursuit of happiness.  And that's what's instigating this, hopefully, last and
> finally litigation.

(*Id.* at 388:4-389:10.)

Plaintiff's deposition testimony, although unclear and internally contradictory regarding

when his emotional distress and mental anguish began and what caused it, if believed, constitutes

evidence that Trans Union may have caused his injury.  *See Cortez*, 617 F. 3d at 719 (finding

testimony that plaintiff suffered severe anxiety, fear, distress, and embarrassment as a result of

the appearance of an erroneous alert from the Treasury Department in her credit file sufficient to

support jury's compensatory award).  The inconsistencies and contradictions go to Plaintiff's

credibility which is not at issue before the court on summary judgment.  *See Zia Trust Co. ex rel.*

*Causey v. Montoya*, 597 F.3d 1150, 1153 n.2 (10th Cir. 2010) (stating that the district court

correctly noted that it was inappropriate to weigh the credibility of the sworn deposition

testimony in evaluating entitlement to summary judgment and citing *Seamons v. Snow*, 206 F.3d

1021, 1026 (10th Cir. 2000) ("It is axiomatic that a judge may not evaluate the credibility of

witnesses in deciding a motion for summary judgment.")).  Upon hearing this testimony a

reasonable jury could find that Plaintiff suffered emotional distress and mental anguish after he

discovered the NCO Financial account on his Trans Union credit report and that this was due to

Trans Union's failure to follow reasonable procedures to ensure the maximum accuracy in Plaintiff's credit file.

Finally, Trans Union also argues that Plaintiff must show that his claimed damages were caused by the Defendant from which he is seeking recovery.  (TU's Mot. at 28.)  At his deposition, Plaintiff testified that he cannot define the amount of damages attributable to Trans Union as compared to Experian.  (Pl.'s Dec. 3, 2009 Dep. at 314:16-315:1.)  However, the court finds that the cases Trans Union references to support this proposition are distinguishable.

In *Cousin*, the Fifth Circuit held that there was insufficient evidence that Trans Union caused the plaintiff's damages where there were reports from multiple credit agencies at play. 246 F.3d at 370.  The plaintiff in that case testified that his emotional distress was the result of a credit denial, but he did not know which report was utilized in the denial.  *Id.*  In *Casella*, both Equifax and Trans Union reported inaccurate accounts relating to past due child support on their credit reports.  56 F.3d at 472.  Knowing this, the plaintiff did not apply for credit for fear that he would be rejected.  *Id.*  He claims that he suffered great emotional distress from the situation.  *Id.* at 473.  The Second Circuit upheld the district court's grant of summary judgment on the grounds that the plaintiff failed to show that the defendants' credit reports caused his emotional distress, as opposed to the City of San Diego, which was also wrongly reporting that he owed child support.  *Id.* at 474.  Notably, the circuit did not discuss the plaintiff's burden on causation as to each defendant separately.  The court did, however, consider that the plaintiff's argument "boil[ed] down to the bare contention that he [was] entitled to damages for pain and suffering simply because he knew of an inaccurate and potentially damaging item in his credit report" and

declined to extend FCRA damages that far.  *Id.* at 475.  Thus, these cases do not stand for the

proposition that, as a matter of law, Plaintiff must prove causation for emotional distress and

mental anguish damages as to each Defendant separately.

Here, Plaintiff's deposition testimony suggests that he is claiming emotional distress and

mental anguish damages against Trans Union based on the appearance of the NCO Financial

account on his credit report despite a long history between the parties regarding errors in

Plaintiff's credit file.  The case is distinguishable from *Cousin* because Plaintiff does not appear

to claim mental anguish as a result of the credit denials.  It is distinguishable from *Casella*

because Plaintiff is complaining of mental anguish and emotional distress caused, not just by the

knowledge of the NCO Financial account on his file, but also by the long history of the dispute

with Trans Union.  Accordingly, the court finds a genuine dispute as to Plaintiff's claim for

mental anguish and emotional distress damages.

In sum, the court finds that the continued appearance of information regarding Jerry

Willard on Plaintiff's credit report, despite the long history between the parties on this issue

supports the inference that Trans Union has failed to follow reasonable procedures to insure the

maximum possible accuracy of the information in Plaintiff's consumer file.  The court also finds

that Trans Union has not shown an absence of evidence to shift the burden to Plaintiff as to

Plaintiff's claim that Bank of America denied his credit card application based on a Trans Union

credit report containing the NCO Financial account.  Finally, the court finds a genuine dispute of

material facts as to Plaintiff's claim for mental anguish and emotional distress.  Accordingly,

Trans Union's Motion for Summary Judgment should be granted as to Plaintiff's requested

damages for the alleged Section 1681e(b) violation, except as to the Bank of America credit

denial and Plaintiff's claim for mental anguish and emotional distress.

**B.**     ***Section 1681i claim***

Section 1681i provides

> . . . if the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consumer notifies the agency directly, or indirectly through a reseller, of such dispute, the agency shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate . . . before the end of the 30-day period beginning on the date on which the agency recieves the notice of the dispute from the consumer or reseller.

15 U.S.C. § 1681i(a)(1).  A consumer reporting agency may terminate a reinvestigation of

information disputed by the consumer under this paragraph, "if the agency reasonably

determines that the dispute by the consumer is frivolous or irrelevant, including by reason of a

failure by a consumer to provide sufficient information to investigate the disputed information."

15 U.S.C. § 1681i(a)(3).

The Tenth Circuit has not addressed the elements of a plaintiff's claim under Section

1681i.  *See Pines v. EMC Mortg. Corp.*, No. 2:08-CV-137 TC, 2009 WL 1683283, at *7 (D.

Utah, July 15, 2009) (unpublished).  Trans Union urges the court to look to other federal

jurisdictions for guidance, citing a variety of district court cases from other districts.  (TU's Mot.

at 31 (citing *Carvalho v. Equifax Info. Servs., LLC*, 588 F. Supp. 2d 1089, 1095 (N.D. Cal.

2008); *Thomas v. Trans Union, LLC.*, 197 F. Supp. 2d 1233, 1236 (D. Or. 2002); *Bermudez v.

Equifax Info. Servs., LLC*, No. 6:07-cv-1492-Orl-31GJK, 2008 WL 5235161, at *10 (M.D. Fla.

Dec. 15, 2008) (unpublished); *Buczek v. Trans Union LLC*, No.

05-80834-CIV-HURLEY/HOPKINS, 2006 WL 3666635, at *3 (S.D. Fla. Nov. 9, 2006)

(unpublished)).)  Based on those cases Trans Union argues that a plaintiff must establish that 1)

the plaintiff's credit file contains inaccurate or incomplete information, 2) the plaintiff notified

the consumer reporting agency directly of the inaccurate or incomplete information, 3) the

plaintiff's dispute was not frivolous or irrelevant, 4) the consumer reporting agency failed to

respond to the plaintiff's dispute; 5) the plaintiff sustained actual damages, and 6) the consumer

reporting agency's failure caused the plaintiff's damages.  (*Id.* at 31-32.)

The court is reluctant to adopt this approach.  In particular, the court is concerned that

this exposition of the elements of a Section 1681i claim places the burden on a plaintiff to show

that the dispute was not frivolous or irrelevant as part of his or her prima facie case.  However,

the plain language of the statute states that "if the *agency* reasonably determines that the dispute

by the consumer is frivolous or irrelevant," the agency may terminate the investigation.  15

U.S.C. § 1681i(a)(3) (emphasis added).  This language suggests to the court an affirmative

defense available to the agency, not an element of a plaintiff's prima facie case.  Moreover, both

Defendants in this case have counterclaimed for attorneys' fees pursuant to Sections 1681n and

1681o, which mandate an award of attorney's fees to a prevailing defendant "[u]pon a finding by

the court that an unsuccessful pleading, motion, or other paper . . . was filed in bad faith or for

the purposes of harassment."  15 U.S.C. §§ 1681n(c), 1681o(b).  It appears that the burden is on

the party moving for fees under Sections 1681n or 1681o to demonstrate that they are warranted.

*See Stiff v. Wilshire Credit Corp.*, No. CIV05-00462PCTMEA, 2006 WL 141610, at *4 (D. Ariz.

Jan. 17, 2006) (unpublished); *see also Perry v. Stewart Title Co.*, 756 F.2d 1197, 1211 (5th Cir.

1985) (noting burden on prevailing defendant under Fair Debt Collection Practices Act with similar provision regarding suits filed in bad faith or for purposes of harassment).  Requiring a plaintiff to demonstrate that the dispute was not frivolous as part of his or her prima facie case would impermissibly shift this burden.

The court finds that the statute and circuit case law suggest the following elements for a claim for negligent noncompliance with Section 1681i: 1) the plaintiff disputed the completeness or accuracy of an item in his consumer file, 15 U.S.C. 1681i(a)(1)(A); 2) the plaintiff notified the consumer reporting agency of the dispute, 15 U.S.C. 1681i(a)(1)(A); 3) the consumer reporting agency failed to conduct a reasonable investigation within the time period allowed, 15 U.S.C. 1681i(a)(1)(A); and 4) the plaintiff suffered actual damages as a result of the inaccurate information in his file, *see, e.g.*, *Ruffin-Thompkins v. Experian Info. Solutions, Inc.*, 422 F.3d 603, 608 (7th Cir. 2005).  Trans Union's arguments attack the first, second and fourth element of Plaintiff's Section 1681i claim.

On February 26, 2008, Plaintiff sent a document entitled "Final Notice" to Trans Union, Experian, and the third credit reporting agency, Equifax Credit Information Services, Inc.  (Doc. No. 119, Ex. A-2 [Final Notice] at 20-22.)  The notice states:

> Credit Reporting Agency, you are here by [sic] notified that you are currently, and have been, wrongfully, willfully and purposefully reporting inaccurate and untruthful student loan information up on [sic] and to others, about Gerald H. Eller.  Any student loan with the Social Security number [],[6] current, in default, transferred, deferred, consolidated, in collection, brought, sold or otherwise, is inaccurate and untruthful.

---

[6] The court has omitted the social security number to protect Plaintiff's identity.

(*Id.* at 20.)  Plaintiff testified at his deposition that this was the only notification he provided to

Trans Union.  (Pl.'s Sep. 10, 2009 Dep. at 70:11-20; 85:10-21.)  He admitted that he did not

specifically dispute the NCO Financial account with Trans Union.  (*Id.* at 89:13-25 & 217-219;

Pl.'s Dec. 3, 2009 Dep. at 393:13-394:2.)  He acknowledged that he was not aware of the NCO

Financial account appearing in his credit file until December 2008.  (Pl.'s Sep. 10, 2009 Dep. at

217-219.)  Finally, he testified that he did not send any correspondence to Trans Union after he

discovered that the NCO Financial account was in his credit file in December 2008.  (Pl.'s Dec.

3, 2009 Dep. at 337:6-10.)

As previously described, the appearance of the NCO Financial account in Plaintiff's

consumer file forms the basis of all of Plaintiff's claims against Trans Union in the Second

Amended Complaint.  Plaintiff has not provided any evidence that he notified Trans Union that

he specifically disputed the accuracy of the NCO Financial account.  Plaintiff did testify in his

deposition that he felt he had already notified Trans Union (via the "Final Notice") that there was

untruthful and inaccurate information on his credit report.  (Pl.'s Sep. 10, 2009 Dep. at 217-219.)

However, by its terms the statute contemplates notification regarding specific items of

information, not general allegations of inaccurate or untruthful information.  *See* 15 U.S.C. §

1681i(a)(1)(A) (requiring the consumer to notify the agency regarding a dispute as to "the

completeness or accuracy of *any item of information* contained in a consumer's file") (emphasis

added); *see also* 15 U.S.C. § 1681i(a)(3)(a) (allowing the agency to terminate a reinvestigation if

it determines that the dispute is frivolous or irrelevant, "including by reason of a failure by a

consumer to provide sufficient information to investigate the disputed information").  The court

finds that Plaintiff's Section 1681i claim fails because Plaintiff has not shown that he notified Trans Union of a dispute as to the NCO Financial account.[7]  Accordingly, the court finds that summary judgment is appropriate as to Plaintiff's Section 1681i claim against Trans Union.

## C.    *Willfulness*

In addition to alleging negligent noncompliance with Sections 1681e(b) and 1681i, Plaintiff alleges that Trans Union willfully violated the FCRA.  Under Section 1681n, a consumer need not prove actual damages if a violation is willful, but may recover punitive damages and statutory damages as well as costs and fees.  *See* 15 U.S.C. § 1681n(a); *see also Birmingham v. Experian Info. Solutions*, 633 F.3d 1006, 1009 (10th Cir. 2011).  The Supreme Court recently interpreted "willful" to require a showing that the credit reporting agency violated the FCRA knowingly or with reckless disregard.  *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 57-58 (2007).  Recklessness is defined as "conduct violating an objective standard: action entailing 'an unjustifiably high risk of harm that is either known or so obvious that it should be known.'"  *Id.* at 68 (citing *Farmer v. Brennan*, 511 U.S. 825, 836 (1994)).

Trans Union argues that Plaintiff has no evidence that it violated the FCRA knowingly or with reckless disregard.  Trans Union acknowledges that Plaintiff believes that Trans Union willfully violated the FCRA because Trans Union has allegedly known since 1999 that Plaintiff

---

[7] The court's previous analysis as to whether Trans Union caused Plaintiff's claimed damages applies here.  Although the court previously concluded, after finding a genuine dispute regarding the reasonableness of Trans Union's procedures, that Plaintiff's Section 1681e(b) claim should proceed to the extent Plaintiff seeks damages resulting from the Bank of America credit denial and his mental anguish and emotional distress, that is not true as to Plaintiff's Section 1681i claim, where Plaintiff has failed to establish the first element of this claim.

is not Jerry Willard and that Jerry Willard has a different social security number than Plaintiff. (TU's Mot. at 34.)  However, Trans Union insists that Plaintiff has no evidence that it knowingly or recklessly failed to follow the FCRA or any of its procedures.  (*Id.*)  Trans Union maintains that the procedures described by Lynn Romanowski, discussed above, are designed to ensure that correct information is matched to the correct credit file, and to reinvestigate disputes by consumers.  (*Id.*)

The court has determined that the evidence suggesting that Trans Union has been aware of mistaken identity issues involving Jerry Willard since before 2001 and has twice removed information pertaining to Jerry Willard from Plaintiff's credit file as part of settlements gives rise to an inference that Trans Union negligently failed to follow reasonable procedures as required by Section 1681e(b).  The court finds that this same evidence suggests reckless disregard on the part of Trans Union for continuing to allow Jerry Willard's information into Plaintiff's credit file.  Two prior lawsuits and two prior settlements arising out of the inclusion of Jerry Willard's information in Plaintiff's Trans Union credit file support an inference that Trans Union knew or should have known of an unjustifiably high risk that Jerry Willard's information would be reported to Trans Union again.  Accordingly, Trans Union's Motion Summary Judgment on Plaintiff's claim for willful violation of Section 1681e(b) should be denied.  However, because Plaintiff failed to establish that Trans Union negligently failed to reinvestigate any disputed information, his claim for willful violation of Section 1681i necessarily fails and summary judgment on this claim is appropriate.

**D.      CCCRA claims**

Plaintiff also alleges that Trans Union willfully violated the CCCRA, Colo. Rev. Stat. §

12-14.3-101 *et seq.*  Colo. Rev. Stat. § 12-14.3-108 provides for three times actual damages for a

willful violation of the CCCRA.  In all relevant respects § 12-14.3-103.5 of the Colorado Act

essentially tracks the language of Section 1681e(b) of the FCRA.  Similarly, § 12-14.3-106 of

the Colorado Act essentially tracks the language of Section 1681i of the FCRA.  Trans Union

incorporates by reference its arguments on Plaintiff's FCRA claims.  (TU's Mot. at 37.)

The court has searched federal and state cases and found only one case considering the

substance of the CCCRA's provisions.  *See Simon v. Directv, Inc.*, No. 09-cv-00852-PAB-KLM,

2010 WL 1452853 (D. Colo. March 19, 2010).  Another magistrate judge in this district

concluded that the plaintiff's CCCRA claims in that case were preempted by the FCRA.  *Id.* at

**3-4.  Absent objection, that recommendation was adopted by the District Court without further

analysis.  *See* No. 1:09-cv-00852-PAB-KLM (Doc. No. 38).  In this case, Trans Union has not

argued that the CCCRA is preempted by the FCRA.  Absent argument and evidence from the

parties on this point, the court cannot determine at this time whether Plaintiff's CCCRA claims

are preempted by the FCRA.

Because the statutory obligations are the same as those under the FCRA, the court's

analysis as to Plaintiff's FCRA claims applies.  Accordingly, summary judgment is not

appropriate as to Plaintiff's claim that Trans Union willfully violated Colo. Rev. Stat. § 12-14.3-

103.5 (the equivalent of Section 1681e(b)), but should be granted on Plaintiff's claim for willful

violation of Colo. Rev. Stat. § 12-14.3-106 (the equivalent of Section 1681i) for the reasons discussed above.

## EXPERIAN'S MOTION FOR SUMMARY JUDGMENT

Based on the Second Amended Complaint and Judge Krieger's ruling on Experian's motion to dismiss, Plaintiff asserts claims against Experian for negligent and willful violation of the FCRA, Sections 1681e(b) and 1681g, and for willful violation of the CCCRA.  (SAC at ¶¶ 12-13, 20-28; Apr. 8 Hr'g Tr. at 16:15-25.)  Experian argues that Plaintiff's claims fail as a matter of law because Plaintiff cannot prove that Experian reported inaccurate derogatory information about him or that Experian failed to provide a credit file disclosure to him when Plaintiff requested it.

In response, Plaintiff states that his claim is that Experian "Negligently, Willfully and Purposely Negligently [sic] violated the Fair Credit Reporting Act (FCRA) and Colorado Consumer Credit Reporting Act (CCCRA), in part, in whole or otherwise, to include, 'failing to follow reasonable procedures to assure maximum possible accuracy of the information in reports concerning Plaintiff.'"  (Doc. No. 154 at 2.)  He also clarifies, "Plaintiff's claim, to be specific, is not that 'Experian failed to provide a current credit file disclosure upon request or that Experian reported inaccurate derogatory information resulting in a credit denial by Citibank' that is Defendant Experian's revision of Plaintiff's Second Amended Complaint."  (*Id.*)  Plaintiff's

response addresses the reasonableness of Experian's procedures and also includes arguments regarding the inclusion of certain student loan information on his Experian credit report.[8]

## A.      Section 1681e(b)

Again, to prevail on a claim for negligent noncompliance with Section 1681e(b), a plaintiff must establish 1) the existence of an inaccurate credit report; 2) that the consumer reporting agency failed to follow reasonable procedures to assure the maximum accuracy of its reports; 3) that the plaintiff suffered an injury; and 4) that the consumer reporting agency's failure caused the plaintiff's injury. *See Cassara*, 276 F.3d at 1217. Experian addresses elements (1) and (4) in its Motion.

In order to make out a prima facie case for a violation of Section 1681e(b), the FCRA "implicitly requires that a consumer must present evidence tending to show that a credit reporting agency prepared a report containing 'inaccurate' information." *Cahlin v. Gen. Motors Acceptance Corp.*, 936 F.2d 1151, 1156 (11th Cir.1991); *see also Ritchie v. TRW, Inc.*, No.

---

[8] As described above, Plaintiff's First Amended Complaint alleged that both Defendants were erroneously reporting a Federal student loan taken out by Jerry Willard as belong to Plaintiff. (Compl. at ¶ 23.) However, in his first motion to amend his complaint, Plaintiff sought to "remove any claims relating to Fair Credit Reporting Act claims based on the alleged inaccurate reporting of the Plaintiff's student loans . . . ." (Doc. No. 31 at ¶ 7.) The court granted this motion and Plaintiff's Second Amended Complaint, which does not include any claims relating to the reporting of student loan information, became the operative complaint. Plaintiff then sought leave to file a third amended complaint to reassert his claims based on the alleged inaccurate reporting of Plaintiff's student loans. (Doc. No. 70.) This motion was denied. (*See* Doc. No. 92 and Apr. 8, 2010 Hr'g Tr.) Accordingly, there are no claims relating to the reporting of student loan information before the court.

91-2208, 1992 WL 21300, at *2 (10th Cir. Feb. 3, 1992) (unpublished).  A plaintiff who fails to satisfy this initial burden has not established a violation of Section 1681e(b).  *Id.*

Plaintiff's claims against Experian arise out of a credit denial by Citibank on January 10, 2007.  Plaintiff alleges that Citibank denied credit "based on an Experian credit report indicating that the Plaintiff had too few satisfactory credit references which were recorded on the credit bureau report and that Experian [had] reported only a limited credit history for him."  (SAC at ¶ 12.)

At the April 8, 2010 Pretrial Conference, Judge Krieger noted that Plaintiff had not alleged that the report provided to Citibank "was inaccurate in any of the information that it did report but rather that the report was inaccurate because it did not contain information that [Plaintiff] wished it had."  (Apr. 8, 2010 Hr'g Tr. at 15:2-6.)  The Court found that Experian had no obligation to "affirmatively seek out additional information about a consumer in order to flesh out a report with information about other unreported credit references in order to make sure it is accurate."  (*Id.* at 14:15-19.)  However, Judge Krieger declined to dismiss Plaintiff's Section 1681e(b) claim against Experian finding that one could interpret Citibank's reference to "too few satisfactory credit references" to mean that Plaintiff "had sufficient credit references to warrant an extension of credit but too many of them were unsatisfactory."  (*Id.* at 15:21-25.)  She found that one might infer from Plaintiff's complaint an allegation that Plaintiff's Experian credit report was inaccurate to the extent that Experian should have included additional explanatory information as to the unsatisfactory references to make them satisfactory.  (*Id.* at 15:25-16:4.)  Accordingly, the court allowed the Section 1681e(b) claim against Experian to proceed, noting

that whether Plaintiff could ultimately support such a claim on summary judgment was not before the Court at that time.  (*Id.* at 16:8-14.)

Experian argues that, as part of its 2006 Settlement Agreement with Plaintiff, Plaintiff agreed that Experian could continue to report the information contained in his March 4, 2006 credit report.[9] (Exp.'s Mot. at 7.)  Experian claims it has continued to do so since that time.  (*Id.*)  Moreover, Experian states that the number of credit accounts reporting in Plaintiff's Experian credit file remained relatively consistent from the date of the settlement through at least September 2007.  (*Id.*)  Experian asserts that the only two negative accounts reported on Plaintiff's credit file since the 2006 settlement are two past due student loan accounts with regard to which Plaintiff admitted he willfully stopped repaying.  (*Id.*)

The January 10, 2007 denial letter from Citibank is addressed to Jerald Eller and states:

> We regret we are unable to approve an account for you at this time because of the following:
> - Too few satisfactory credit references were recorded on your credit bureau report
> - The consumer reporting agency serving your area has reported only a limited credit history for you.

---

[9] Experian refers to this as a "credit file disclosure." (Exp.'s Mot. at 7.)  In support of its Motion, Experian provides the Declaration of Kimberly Hughes, a Senior Legal and Compliance Specialist in Consumer Affairs Special Services for Experian.  (Doc. No. 123-2 at 1-5.)  In her Declaration, Ms. Hughes explains that "a 'consumer report' or a 'credit report' is a report of credit information to a credit grantor, insurer, or employer for the purpose of evaluating a consumer's credit" while the document provided to a consumer who seeks access to his credit information from a credit reporting agency is called a "consumer file disclosure" or "credit file disclosure." (*Id.* at ¶ 7.)  Because the term credit report has been used in this litigation to refer to both a credit report and a credit file disclosure as defined by Ms. Hughes, the court will continue to use the term credit report generically to refer to both types of documents.  The difference in terminology is not dispositive in this case.

(Doc. No. 123-5 at 5.)

     In his response, Plaintiff points to three enclosures which he claims prove that Citibank's statement that "Plaintiff's name was Jerald Eller [and] that Plaintiff had too [few] satisfactory credit references and a limited credit history" is not true or accurate.  (Doc. No. 154 at 4.)  Plaintiff cites his 2006 Settlement Agreement with Experian in which, he argues, Experian "ADMITS that Plaintiff had many satisfactory credit references, a lengthy, complete, adequate and boundless credit history and never used the name Jerald Eller as reported on Plaintiff's Experian Consumer Credit Report dated March 4th, 2006."  (*Id.* at 2.)  He also cites a combined credit report containing information from all three credit reporting agencies dated January 22, 2007 and an Experian credit report dated January 24, 2007.  (*See* Doc. Nos. 154 at 36-39; 154-1 at 1-11.)  Plaintiff suggests that these two documents are consistent with Plaintiff's consumer file on March 4, 2006, as incorporated into the 2006 Settlement Agreement, but are inconsistent with the statement in  Citibank's denial letter.  (Doc. No. 154 at 3.)

     Though difficult to discern, Plaintiff's argument appears to be based on an inference that if Experian acknowledged Plaintiff's satisfactory credit history in the 2006 Settlement and, in January 2007 was reporting Plaintiff's consumer information consistent with the Settlement Agreement, then Citibank's denial on January 10, 2007 based on an Experian report implies that Experian failed to follow reasonable procedures.  The flaw in Plaintiff's reasoning is that the assertion of "too few satisfactory credit references" and a "limited credit history" is found in Citibank's denial letter and is not consistent with the evidence Plaintiff himself provides of the contents of Plaintff's Experian credit file.  Although the denial letter states that it was based in

41

whole or in part on information provided by Experian (Doc. No. 123-5 at 5), Plaintiff has not

provided evidence of a credit report that supports Citibank's purported reason for the denial or

evidence of an otherwise inaccurate credit report.

The 2006 Settlement Agreement between Plaintiff and Experian contains a provision

which reads:

> 5.      Plaintiff has reviewed a copy of his Experian credit file, a copy of which is
> attached hereto as Exhibit A.  Without acknowledging that the information
> contained in the credit file is or is not accurate, Plaintiff agrees that Experian may
> report information contained in Exhibit A consistent with the provision of the Fair
> Credit Reporting Act.

(Doc. 123-5 Ex. J [Experian Settl. Agree.] at 2.)  Plaintiff's March 4, 2006 credit report attached

to the Settlement Agreement contains no negative accounts.  (*See* [Experian Settl. Agree.] at 14-

28.)  When Experian took his deposition on January 28, 2008, Plaintiff reviewed the March 4,

2006 Experian credit report attached to the 2006 settlement as well as his Experian credit reports

from September 27, 2007 and November 7, 2007.  (*See* Doc. No. 123-5 at 31, 42-45.)  Plaintiff

acknowledged that while there were 26 accounts reporting in good standing on March 4, 2006,

there were 27 accounts reporting in good standing in September and November of 2007.  (*Id.* at

42-44.)  Plaintiff agreed that these reports were substantially similar in terms of the accounts that

were reporting and the number of accounts reporting.  (*Id.* at 45-46.)  Plaintiff also

acknowledged that two accounts were listed as potentially negative items on both the September

and November 2007 reports.  (*Id.* at 42, 46.)  He admitted that these two accounts, for student

loans, became negative when he stopped paying them.  (*Id.* at 36-37, 42.)

This evidence demonstrates that, following the settlement, through at least November of 2007, Experian reported information consistent with the Settlement Agreement and to which Plaintiff had agreed. Although Plaintiff never admitted that the March 4, 2006 credit report was accurate, he has offered no evidence that it or the reports from September and November of 2007 were inaccurate. Furthermore, Plaintiff has offered no evidence that Experian should have included additional explanatory information to make the unsatisfactory items satisfactory, as Judge Krieger noted might support a claim under Section 1681e(b). In fact, he acknowledged 26 accounts in good standing as of March 2006 and 27 accounts in good standing as of September and November 2007 and he admitted responsibility for the only two unsatisfactory items on these reports. Accordingly, the court finds that Plaintiff has failed to satisfy the first element of a Section 1681e(b) violation.

Experian also argues that Plaintiff cannot demonstrate that his injury was caused by Experian reporting inaccurate information because Plaintiff cannot prove an inaccuracy in his credit file at the time of Citibank's credit denial. (Exp.'s Mot. at 20.) Experian has provided evidence that Citibank made only one inquiry into Plaintiff's Experian credit file between the time of the 2006 settlement and Citibank's credit denial on January 10, 2007. (*See* Doc. Nos. 123-2 at 26, 123-5 at 25-26.) Plaintiff's September 27, 2007 credit report reflects that this inquiry was made on October 5, 2006. (Doc. No. 123-2 at 26.) Plaintiff himself notes that no Citbank inquiry appears on his January 24, 2007 Experian credit report. (Doc. No. 154 at 3.) As just described the evidence demonstrates that, at the time of the Citibank inquiry in October 2006, Experian was reporting information consistent with the Settlement Agreement and to

which Plaintiff had agreed.  Plaintiff has not offered any evidence to dispute this and has not

offered any evidence of any inaccuracies in his credit file at the time of Citibank's denial.

Therefore, the court finds that Plaintiff has failed to demonstrate that any alleged failure on the

part of Experian to follow reasonable procedures caused his injury.  Accordingly, the court

recommends that Experian's Motion for Summary Judgment be granted as to Plaintiff's Section

1681e(b) claim against it.

**B.      *Section 1681g***

Section 1681g governs the disclosure of information by consumer reporting agencies to

consumers.  It provides that "[e]very consumer reporting agency shall, upon request . . . clearly

and accurately disclose to the consumer (1) all information in the consumer's file at the time of

the request . . ." with certain exceptions, not relevant here.  15 U.S.C. § 1681g(a).  Section 1681h

provides that "[a] consumer reporting agency shall require, as a condition of making the

disclosures required under section 1681g of this title, that the consumer furnish proper

identification."  15 U.S.C. § 1681h(a)(1).  Section 1681j provides that the disclosure is provided

free of charge once in any 12-month period or when the request is made within 60 days of the

consumer receiving an adverse notice pertaining to the consumer's credit, such as a credit denial.

15 U.S.C. § 1681j(a) and (b).

Judge Krieger construed a Section 1681g claim based on the allegation in Plaintiff's

complaint that, despite requests, "Experian never provided a copy of the credit report which was

used to deny credit by Citibank . . . ."  (SAC at ¶ 13.)  In his response, Plaintiff states that his

claim, "to be specific, is not that 'Experian failed to provide a current credit file disclosure upon

request or that Experian reported inaccurate derogatory information resulting in a credit denial by Citibank.'" (Doc. No. 154 at 2.)  To the extent Plaintiff ever intended to assert a claim under Section 1681g, the court will address Experian's arguments.

Experian claims that it was not required under section 1681j to provide Plaintiff with the exact credit report relied on by Citibank; rather it was required to provide a copy of his credit report containing information in his file at the time of his request for a credit report.  (Exp.'s Mot. at 11.)  Experian argues that is it is entitled to summary judgment because it provided Plaintiff with a copy of his credit report which contained information that appeared in his file at the time of the request.  (*Id.* at 10.)

Citibank denied credit to Plaintiff on January 10, 2007.  (Doc. No. 123-5 at 5; SAC at ¶ 12.)  On August 27, 2007,  Plaintiff's counsel requested a "copy of the credit report which was provided to Citibank . . . ."  (Doc. No. 123-2 at 7.)  Experian responded with a request dated September 11, 2007 for additional identifying information needed to process Plaintiff's request.  (Doc. No. 123-2 at 9.)  After receiving this information, Experian prepared a credit report dated September 27, 2007 that included all relevant information in Plaintiff's Experian credit file as of August 27, 2007.  (Doc. No. 123-2 at 5, 14-32.)

Experian was not required to provide a copy of the report used by Citibank.  By its own terms, the statute requires the credit reporting agency to provide a disclosure that contains all information in the consumer's file "at the time of the request."  15 U.S.C. § 1681g(a)(1). Plaintiff has provided no evidence of other requests for his credit report to which Experian did not respond, and no evidence to suggest the September 27, 2007 report that Experian provided

was deficient.  Because Experian was not required to provide a copy of the credit report relied on

by Citibank and because Experian did provide Plaintiff with a credit report that included the

information in his credit file at the time of the request from counsel, Plaintiff has failed to

establish a claim under Section 1681g.[10]

Finally, Experian argues that Plaintiff cannot prove that he was damaged as a result of

Experian's alleged failure to provide a copy of his credit report.  (Exp.'s Mot. at 14.)  As

previously mentioned, Section 1681o provides liability for "any actual damages sustained by the

consumer."  15 U.S.C. § 1681o.  Plaintiff has not even alleged, much less provided evidence,

that he was injured as a result of Experian's alleged failure to provide him with a copy of his

credit report.  Accordingly, the court finds that summary judgment is appropriate as to Plaintiff's

Section 1681g claim against Experian.

## C.    *Willfulness*

Plaintiff also alleges that Experian willfully violated the FCRA.  To show that a

defendant acted willfully, a plaintiff must show that the defendant violated the FCRA knowingly

or with reckless disregard.  *Safeco*, 551 U.S. at 57-58.  Because Plaintiff has failed to establish

that Experian negligently violated any provision of the FCRA, his claim for willfulness

---

[10] Experian also argues that Plaintiff's Section 1681g claim fails because Plaintiff did not request his credit report within sixty days of the adverse action notification.  (Exp.'s Mot. at 11.) The sixty day period is relevant in that Section 1681j(b) provides that a consumer requesting a credit report within sixty days of an adverse action notification is entitled to the credit report free of charge.  However, there is nothing to indicate to the court that Plaintiff's request for a credit report seven months after Citibank denied credit was not pursuant to the free annual disclosure provision of Section 1681j(a) or that Plaintiff did not pay for his report pursuant to 1681j(f). Accordingly, the court finds Experian's argument regarding the sixty day period inapposite.

necessarily fails.  Moreover, Plaintiff has provided no evidence that Experian acted knowingly or

with reckless disregard to the FCRA.  The court therefore concludes that summary judgment is

appropriate as to Plaintiff's claim that Experian acted willfully.

**D.     CCCRA**

Plaintiff also alleges that Experian willfully violated the CCCRA.  Again, the language of

the CCCRA essentially tracks the language of the FCRA.  As mentioned above, Colo. Rev. Stat.

§ 12-14.3-103.5 is essentially the same as Section 1681e(b) of the FCRA.  Likewise, the

provisions of Colo. Rev. Stat. 12-14.3-104(1) are essentially the same as the provisions of

Sections 1681g and 1681j of the FCRA.  Because the statutory obligations are the same as those

under the FCRA, Plaintiff's CCCRA claims against Experian fail for the same reasons that

Plaintiff's claims for willful violation of the FCRA Sections 1681e(b) and 1681g fail, and

summary judgment is appropriate.

## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

The arguments and evidence contained in Plaintiff's motion for summary judgment have

been discussed in relation to the Defendants' Motions for Summary Judgment.  The court has

found a genuine dispute of material fact as to Plaintiff's claims for negligent and willful

violation of Section 1681e(b) against Trans Union to the extent he seeks damages for the Bank

of America credit denial and for emotional distress and mental anguish.  The court has concluded

that summary judgment in Defendants' favor is appropriate on all of Plaintiff's remaining

claims.  Because the court has found a genuine issue of material fact as to Plaintiff's Section

1681e(b) claims against Trans Union, Plaintiff is not entitled to summary judgment on those

claims.  Accordingly, Plaintiff's Motion for Summary Judgment should be denied in its entirety.

### DEFENDANTS' COUNTERCLAIMS

Both Defendants have counterclaimed against Plaintiff, pursuant to FCRA Sections

1681n and 1681o, seeking attorney's fees for defending against Plaintiff's Section 1681i claims.

(*See* TU's Answer & Countercl.; Exp.'s Answer & Countercl.)  However, neither Defendant has

argued for summary judgment on their counterclaims.  Judge Krieger granted Experian's Motion

to Dismiss as to Plaintiff's Section 1681i claim against it in April of 2010.  This court now

recommends that summary judgment be granted in Trans Union's favor on this claim as well.

However, neither of these actions entitles Defendants to summary judgment on their

counterclaims for attorney's fees.

As discussed above, the burden is on the party moving for fees under Section 1681n or

1681o to demonstrate that they are warranted.  Because Defendants have not made any

argument, or presented any evidence in support of summary judgment on their counterclaims,

Defendants have not met their burden and summary judgment on their counterclaims is not

warranted.

WHEREFORE, for the foregoing reasons, the court respectfully

RECOMMENDS that Defendant Trans Union LLC's Motion for Summary Judgment

(Doc. No. 118) be GRANTED IN PART and DENIED IN PART.  The court recommends that it

be DENIED as to Plaintiff's request for damages as to the Bank of America credit denial and for

mental anguish and emotional distress for negligent noncompliance with Section 1681e(b),

DENIED as to Plaintiff's claim for willful violation of Section 1681e(b) of the FCRA and Colo.

Rev. Stat. § 12-14.3-103.5, and GRANTED in all other respects.  Further, this court

RECOMMENDS that Defendant Experian Information Solutions, Inc.'s Motion for

Summary Judgment (Doc. No. 122) be GRANTED, and

RECOMMENDS that Plaintiff's Motion for Summary Judgment (Doc. No. 124) be

DENIED, and finally

RECOMMENDS that, to the extent either Defendant sought summary judgment on its

counterclaims, those motions be DENIED.

## ADVISEMENT TO THE PARTIES

Within fourteen days after service of a copy of the Recommendation, any party may

serve and file written objections to the Magistrate Judge's proposed findings and

recommendations with the Clerk of the United States District Court for the District of Colorado.

28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995).  A

general objection that does not put the district court on notice of the basis for the objection will

not preserve the objection for *de novo* review.  "[A] party's objections to the magistrate judge's

report and recommendation must be both timely and specific to preserve an issue for de novo

review by the district court or for appellate review."  *United States v. One Parcel of Real Prop.*

*Known As 2121 East 30th Street, Tulsa, Okla.*, 73 F.3d 1057, 1060 (10th Cir. 1996).  Failure to

make timely objections may bar *de novo* review by the district judge of the magistrate judge's

proposed findings and recommendations and will result in a waiver of the right to appeal from a

judgment of the district court based on the proposed findings and recommendations of the

magistrate judge.  *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (a district court's decision to review a magistrate judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule");  *One Parcel of Real Prop.*, 73 F.3d at 1059-60 (a party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review);  *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Ref. Sys., Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the magistrate judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the magistrate judge's ruling); *but see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

Dated this 17th day of May, 2011.

BY THE COURT:

Kathleen M. Tafoya
United States Magistrate Judge